Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and get their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. We're happy to hear argument in our first case, United States v. Heyer. Thank you, Your Honor. Good morning. Good morning. May it please the Court, Eric Brignac for Appellant Thomas Heyer. District Court, of course, has wide discretion in making decisions under the Court Interpreter Act, but the discretion is not limitless, and more fundamentally in this case, the District Court has a basic obligation to exercise that discretion, and Judge Boyle did not exercise his discretion in this case. It's hard to think of what else Mr. Heyer could have put on the record and could have demonstrated to show that he needed consecutive interpretation services to assist in his defense and to understand the proceedings against him. He didn't put on anything. Your Honor? He didn't put on anything. Dr. Andrews' report explained in great detail, based on the academic literature and based on Mr. Heyer himself, that there was a need for these services, and the government, actually the government didn't even necessarily object to this. Mr. Heyer put on this evidence, he moved for the relief, and the District Court in three sentences said, we're not turning this into a marathon, this is a civil case, the answer is no. One of those three sentences strongly indicates he might not have quite understood that he had an obligation to provide these in this civil case. No, no, no, he has an obligation to consider it. That is true, Your Honor. Although I would, he certainly, the Congress and the Due Process Clause with its reference to liberty does not create a criminal civil distinction, neither does the statute, but you're correct, Your Honor, that he had the obligation to consider it, and that's what he did not do. I think most of the time when we come up here with the situation where it was a case of the District Court's discretion or, as you know, the government frames it a case of him managing his courtroom, you have a situation where both sides presented some evidence, presented some argument, and the District Court ideally makes findings on the record, allowing this court to review it and demonstrating that the District Court carefully considered it. At a minimum, at least here's the evidence and argument so we can maybe make some sort of assumption based on, you know, what was in the record. The report was submitted to the District Court? Yes. Yes, Your Honor. So I take your point about often there is an explication by the District Court of its rationale, but as you know, there often is not, and we look and we don't reverse just because the District Court doesn't tell us chapter and verse about what it's thinking. Well, no, but, Your Honor, certainly there's a case, for instance, if there had been, if the District Court in this case had said, Okay, I've seen Mr. Heyer's evidence. You know, what does the government say? And if the government had cross-examined Dr. Andrews, the government... That might have been nice, but that's not necessary. It is necessary, Your Honor, if I may, for the District Court to demonstrate some level that the District Court actually considered this. We're not asking, look, if I were up here saying... Well, that would have required a hearing, which your client did not request. Your Honor, we did not formally request a hearing. We presented a prima facie case, but stronger than a prima facie case. This was not just a proper, you know, Your Honor, I think Mr. Heyer could use consecutive interpreting. Where did the counsel below make this argument? Because I'm looking on Joint Appendix page 87. Maybe there's one somewhere else, and counsel below says we would ask to allow consecutive interpreting. And then the District Court says, well, why do you want that? And some of the argument that appears in this record is, well, the potential problem is that we could be down the road before we realize that Mr. Heyer doesn't understand something. That's it. Your Honor, respectfully, that is not it. Well, show us where there's something else. Yeah, Joint Appendix 644, and actually the broader context around that, that's the site, Your Honor, to Dr. Andrews' report. We had presented... Wait a minute, though. Where does counsel say, well, here's Dr. whatever-her-name-is report, and here's why I think this is important, and this is my argument to the court based on this report? Your Honor, to my recollection, counsel does not reference the report, but the report had been submitted to the District Court. The report was in the record, and there's certainly... That's the question that I asked you to start with, I thought. There may be a report in the record, but when the court asks counsel for the basis for their motion, they don't say anything about this report. Your Honor, the District Court had the report in front of it, and we have to assume that the District Court has considered the record and has considered all of the evidence. The idea that we... That's exactly contrary to the first argument, and you may do it. If the District Court did consider it, then all we're doing is reviewing for abuse of discretion. The District Court, we assume, as you say, the District Court considered it, and it didn't have to make an explication of why it thought that the relief it did give was adequate. Your Honor, I do believe... Actually, it's not just me. The District Court... Our evidence was put on without any contradiction, so upon reviewing that, this court has to accept those allegations as true. The District Court also needs to provide, for two primary reasons, enough of an explanation for us to review that decision on appeal. First, we don't know what the District Court considered. The only legal analysis it gave... You just told us a minute ago we have to assume that the District Court considered the report. That's what you said in response to Judge Agee. Yes. So we are assuming that. Okay, so the District Judge considered the report. The District Judge had the report in front of him. The District Judge does not give this court any reason, anything to review. We have no idea if the District Court properly considered the report. We have no idea if the District Court committed legal error. The only legal analysis, if you call it that, that the District Court provided is, in our view, an incorrect statement of the law. Well, let's assume... And I'm not necessarily agreeing with you, but let's assume that there was an error on the part of the District Court in this case. What's the prejudice based on this record? I don't see any evidence that there was any problem with the way the hearing was, in fact, interpreted in this case. Your Honor, first... Thank you for asking that question. The first problem is... Let's make the assumption that, you know, this oral argument was taking place in Chinese, and I had an interpreter here who was not an adequate interpreter, was giving me about 5% or 10% of what was being said. To sort of put the burden on me to somehow be able to point to the prejudice in the 95% of what I didn't understand, the type of error here, Your Honor, was in large part an error of Mr Heyer not understanding, not hearing, not getting what was said. So I would say, Your Honor, it's very difficult, if not impossible, to ultimately put... What was the proof in the record with the four interpreters that had been appointed for this gentleman that that ever occurred? If you look, Your Honor, at Joint Appendix 644, the certified deaf interpreting, which the government, and I think Your Honor is referencing, certainly relies on as perhaps an adequate substitute. The certified deaf interpreting, Dr Andrews says, is a supplement to the consecutive interpreting, and the certified deaf interpreting actually takes... requires extended time periods. This is her analysis of the actual trial or her report beforehand? No, this is her report beforehand, Your Honor. What I'm asking for is evidence from the trial that shows there was a difficulty that created prejudice. Yes, Your Honor, there are several instances we point to in our brief, Joint Appendix 91, Joint Appendix 131, Joint Appendix 170, where the interpreter indicated, you know, Your Honor, I'm having trouble, I need help. You know, this is going too fast. And in response, the district court slowed the proceedings down, accommodated those concerns, and that was it. And based on... But the assumption, and I think it's the assumption the government's brief is making, is that, you know, we put on the case that Mr. Heyer was not going to be able to understand these proceedings without consecutive interpreting. We made that case, we made the motion, the district court denied it. Certainly there's no obligation to continue to pester the district court to continue to say, you know, we know Your Honor's seen this, we know you've considered it, but, you know, we're raising the same objection again. That's not a burden that's ever been placed. Well, no, I mean, there's a difference between doing that and pointing out prejudice in the record. Unless you're asking the court that in a case like this we always have to assume prejudice, is that what you're asking us to do? Oh, no. In a case like this, certainly not, Your Honor. In this particular case, we don't have to assume prejudice. The record evidence demonstrates prejudice because Dr. Andrews' uncontroverted analysis, which the district court, you know, there was no evidence to the contrary, the district court summarily dismissed it, indicated that Mr. Heyer would not understand these proceedings. So there's the evidence. This is not a broad rule that's going to apply across the board. This is a case where one party puts on a strong prima facie case demonstrating this need. The other party puts on no evidence in contrast to that. The district court summarily dismisses it. You know, in that case, the record demonstrates the prejudice. And again, I think asking Mr. Heyer to take the burden to have this put on him, look, you're not going to understand 90% of what's going on. It's going to pass over your head. The words literally won't be translated for you. But arbitrarily stand up and say, you know, I think I may have missed something. You know, certainly there was a very complex system going on, Your Honor, you know, with the four interpreters. But no one really argues that Mr. Heyer understood these proceedings. And there is prejudice, Your Honors, in as much as, for instance, during the trial, one of the questions in all of these 48 hearings, if the government does not call the respondent to testify, is whether the respondent is going to testify during the presentation of his case. And that's a decision, maybe the most important strategic decision a litigant and his attorney can make. And after the government has its case, you have that conversation. Do you need to contradict what they said? Did they get it right? Is this worth the risk, et cetera? Doing that with a litigant who effectively wasn't present during the presentation of the government's case, during the presentation of all of these prior allegations of what he did and did not do? Yes. But, again, you're assuming that because there's no direct evidence in the record that he did not understand. You're just basing that on the report that said that if we don't do it this way, he's not going to be able to understand. I am basing it on the report. I wouldn't say I'm just basing it on the report. Mr. Heyer never said that. There's no indication, Your Honor, that Mr. Heyer did not say that. There's no indication, Your Honors, that Mr. Heyer was suddenly granted linguistic competence overnight. No, but, see, I think the problem with your argument is that you pointed to one or two instances when you were talking just a minute ago about times when he had difficulty, right? And the court slowed things down. But in your expert's report, she does, to be sure, suggest among the six things that should be done, and the district court did most of them, consecutive interpreting. And she says it is noted that even with these accommodations that Mr. Heyer's linguistic incompetence will preclude him from understanding the court proceedings of what will transpire during his hearing. So there really wasn't anything, according to your expert, that was perfect. And the district court made an assessment that the kind of translation, the interpreting that he gave you, was sufficient, and that he would slow things down. And he did, in response to any particular difficulty. Your Honor, I would disagree with the fact that the district court... But have I misread the report? I would... You have not misread her report, and I definitely want to get to that. I would disagree, and I think this is in some ways the crux of it, that the district court made an assessment. The district court did not... See, what your pitch is, the district court didn't tell us its assessment, chapter and verse, and therefore it didn't make one. But as you know from your experience, there are many times when the district court... District courts are busy. They don't tell us every reason. And, Your Honor, in this, obviously, if we disagree, this is certainly too bad for Mr Hyer. I think there are... The district court could have had a paragraph of colloquy. The district court could have gone back and forth with the government. To call with... And I'm sorry, Your Honor, you had a point? You said something I just couldn't understand. Oh, I'm sorry. The district court... And certainly I think Your Honors are saying, you know, this could have been chapter and verse, he could have conducted a full hearing, and that was certainly not required. We agree, that was not required. And to me, to look at three sentences, you know, this is a civil case, the answer is no, we're not turning it into a marathon. I mean, even the marathon point. How do we know what judicial resources were saved here? How do we know how much longer this would have taken? It was a day-and-a-half hearing. Would it have been a three-day hearing? Would it have been a week-long hearing? And if we are that concerned about saving judicial resources, why are we concerned but for cases like this, where someone's liberty is at stake, and there's a great risk that they may not understand what's happening before them? I also... Judge Mott, you raised a great point about Dr Andrews' report. If you read that in context, she talks about legal proceedings generally, and I think the nature of it is generally criminal proceedings, because that's where liberty tends to be at stake, and she talks about the difficulty of translating legal terminology. I would certainly agree that, say, there's probably never no translation in the world that would let Mr Heyer... If I may just finish the point. Thank you. Mr Heyer understand the true meaning of clear and convincing evidence, for instance. I don't know if I understand the true meaning of clear and convincing evidence. But most of what was being said that Mr Heyer would have responded to was discussion of Mr Heyer's past, factual recitations of what he did, his thoughts, his feelings, his actions, and their import. And that is certainly something that Mr Heyer could have understood. We had the resources to allow him to understand that and assist his attorney and understand the proceedings, and the district court summarily, and in our view capriciously, we denied him that. That's the error. Thank you. Ms. Walker. Your Honors, good morning. May it please the Court, my name is Denise Walker. I represent the government in this matter. Your Honors, it's the position of the government that the district court did not abuse its discretion in denying Mr Heyer's request for consecutive interpretation. My colleague stood before this panel and said that the respondent presented uncontradicted evidence to the court that there was a need for consecutive interpretation. That presentation is simply not true. The record is fraught with opportunities in which others, other evaluators, in the course of his own deposition, other individuals who are able to communicate with Mr Heyer without the qualification of consecutive interpretation. For example, in his deposition specifically, the second deposition, the May 1st, there were two interpreters that were present. At the beginning of the deposition, the interpreters informed him that they would both be using concurrent as well as consecutive interpretation. Mr Heyer's counsel was present at that deposition. There was no objection by counsel. Particularly when counsel began her own examination of Mr Heyer, she did not say to the interpreters, use consecutive only so that he can understand me. There was an evaluation from 2002 that is contained in the record that sets forth the evaluator's belief that Mr Heyer was in fact proficient in American Sign Language and that he had no problem in interpreting and working with Mr Heyer. He noted that, as is such the case in some foreign languages like Chinese, there are tense issues in certain verbs that are presented through the course of American Sign Language. However, that evaluator felt that Mr Heyer was competent in his communication. There were two additional evaluations in both 2006 and 2007 prior to criminal proceedings. It was determined in both of those proceedings that Mr Heyer was capable of understanding the nature of the proceedings against him. Furthermore, in the course of his deposition, Mr Heyer specifically asked in Joint Appendix page 501-02 if he understands what sexually dangerous means. He's able to provide an explanation back to counsel that, while not befitting of a legal definition, certainly depicts his understanding of the nature of the proceedings against him. Furthermore, there's a copy of the deposition contained in the Joint Appendix that Mr Heyer himself corrected. He was able to go back through his written deposition and determine where the interpreter made a mistake. He himself believed that the interpreter got it wrong. Ms. Walker, that sounds fairly compelling. I guess the question is, how do we know the district court  not to grant consecutive interpretation for the hearing? Your Honor, it's the government's belief that the court considered the entire record, and proof that the court actually did consider the entire record are the accommodations that were in fact made for Mr Heyer. There were four interpreters that were in the courtroom. There were two certified deaf interpreters, two of those American Sign Language interpreters. One item that does not appear in the record is that Dr Andrews' suggestion that an interpreter actually be placed at the table with Mr Heyer, that in fact occurred. The items that Judge Boyle . . . But I think the question to you is, how do we know this? We understand that the government thinks that we should conclude this, but you're familiar with the Wooden case, right? Yes, ma'am. In Wooden, we said that when the district court did not acknowledge in any way the evidence that was for the defendant, we found that there was clear error. How would you distinguish Wooden? Your Honor, distinguishing Wooden, it's the government's belief that that is the overall determination of the sexually dangerousness of the individual. Sure. That's the ultimate issue. It's a different issue, but why . . . We've got precedent here. Your Honor . . . We find that the district court hasn't told us enough in a case like this. That's correct. Or we've reversed. And that would be based on the ultimate issue of the case. What we're looking at here is, in essence, emotion and liminy. Emotion and liminy that was made with one sentence. That was not based upon, in counsel's presentation to the court, of the entire record. It was based upon the presentation that Mr. Wooden needed consecutive interpretation. The court, we can assume utilizing the Matthews factors, determined that that wasn't judicially efficient and decided against the consecutive interpretation. I believe there are cases that suggest that a trial judge, district court judge, abuses his or her discretion if he or she does not understand the limits of that discretion. Now, Mr. Brignac suggested that the fact that the district court looked at this as a civil case and somehow made a distinction suggests that he did not understand the scope of his discretion in this case. How do you respond to that? Your Honor, the government would disagree. The fact that the judge is noting that this is a civil matter. Why would he note that? It doesn't matter under the Act, does it? Your Honor, it does not matter under the Interpreter's Act. It does not. He simply stated this is a civil matter. He could be inferring that there is a lower burden of proof setting forth in a civil matter. Is that right? Well, I guess that's correct in the abstract, but with respect to the need for interpretation, particularly when you're dealing with a commitment hearing, which is a pretty serious matter, why that distinction? Your Honor, it could be that Judge Boyle actually was basing the decision on the accommodations he had already made. Four of the six requests that were set forth in Dr. Andrews' report were made by the court. She specifically asked the court for a legally certified interpreter, a certified deaf interpreter, that the court stop if the interpreter's need be, that the judge ask if the respondent had an understanding of the proceedings, that there was an interpreter at the table, and for consecutive interpretation. But for the consecutive interpretation and the judge stopping to ask if the respondent was okay with the proceedings going on, if he understood it, which in the government's position would actually supplant the need for counsel in this proceeding or in any other, the court actually obeyed by the provisions set forth in Dr. Andrews' report. That may be while the judge is noting, in fact, that he's already put the parameters in place for the civil matter to proceed and that there was no indication given that the respondent did not understand the nature of the proceedings against him. There's a very clear distinction between how the civil matter progresses, particularly in the 48s, versus how the criminal matters progress. You all are aware that in a Rule 11 hearing, the judge has to inform the defendant of the nature of the penalties they face, the nature of the charges that they face, and ask them if they have a clear grasp. In these proceedings, they've been ongoing for months. Counsel is met with the respondent on multiple occasions. The respondent in this case was deposed twice. There were numerous expert reports that are given over to the respondent well in advance of the hearing time to give the respondent an opportunity to know those, as my colleague put it, the facts and feelings that will be alleged at the hearing. The respondent in these cases has numerous opportunities to know the allegations that will be made at the time of hearing, particularly the Baker case even notes that civil matters remove the fact-finding effort in proceedings. It's simply a battle of the experts and which expert the court believes more. Therefore, Judge Boyle could have simply said, this is not an occasion where one witness will be making real-time, for the first time, allegations against the respondent to which the respondent needs to immediately respond to his counsel and say, but ask him this. That's not what happens in these civil matters. They're played out well before. The allegations are set very much forward well in advance of the hearing, and then the experts take the stand and, for more or less, parrot the information that's already contained in their report. And because Judge Boyle actually did make several of the accommodations set forth by Dr. Andrews, he did not abuse his discretion in denying the request for consecutive interpretation. How did the consecutive... Were you there? No, ma'am. I was not. However... Maybe you can tell me this anyway. How does the consecutive interpretation work exactly? The consecutive interpretation works in that the question that you just posed to me, the interpreter would not begin interpreting to me until you've completely finished. And then is there silence in the courtroom? There is silence in the courtroom. And that is the explanation on the Joint Appendix, page 87, that Mr. Acker provides to the court, that it would actually double the time of the hearing. And Judge Boyle is allowed, through the course of judicial economy, to determine the time that's allotted for any proceeding. And I'll note to you that in the... So if it's simultaneous translation, as I'm talking, someone is saying this to the person that has the things translated to them, is that it? That is correct. Such that by the time you have finished talking, the interpreting at most will stop a second or two after you are finished. But I'll note for the court that in the Joint Appendix, the docket of this case as it exists, docket entry number 20, sets forth that the court has a number of these hearings already on the docket and is making an effort to attempt to set these cases in due course so that they can be heard. Well, that reminds me to ask you a question that... You know, we've had a bunch of these cases, gone up to the Supreme Court. Where is the government in giving these people hearings? Your Honour, the hearings are... They've now come to a slow. The original bottleneck of the individuals who have been... How long has somebody kept there without a hearing past their detention as a matter of law? Your Honour, that's not a finite answer. Well, give me an infinite answer then. I can give you a broad sense of how the hearings work. Okay, give me a broad sense. Once BOP, the Bureau of Prisons, actually certifies an individual, the process then begins. We know about these cases. You don't have to come back to me. Yes, Your Honour. But the reason that...  how long is it, just as a rule of thumb, how long has it taken now? To Judge Motz's question, I can't say how long past their release date because that would, of course, vary upon when they're certified in conjunction with their release date. Well, you have to know how, as a rule of thumb, they're given the certification after their release date. That's one period of time. And then, how long after that they get the hearing? Your Honour, the hearing can take place within a matter of six months or longer. There are several variables that are in place right now, including the availability of experts. There has been, I will inform the Court, there was a delay due to the government shutdown. There were several depositions that were scheduled during that time. There were also several expert reports that were anticipated during that time that the government was not able to obtain or perform. So this delay is all the government's fault? Because of shutdown or whatever, but it's not the defendant's fault? Your Honour, it's not usually the defendant's fault. I will not make a blanket statement and say that it's not always. Six months? Are any of them a year? It can be up to a year, yes, depending on the issues. Are there even more than a year? There are some that are still in the pipeline that are beyond a year. Yes, Your Honour. Well, does the government have any view about when this is going to get a little bit more? Because these people, you know, were supposed to be getting out. That is correct, Your Honour. Now that the case law, although there are still some challenges to it... The case law is pretty well... we think pretty well straightened out here, so... Your Honour, my colleague would disagree with you. Well, he can make further challenges, but as far as the government is concerned, it's pretty well straightened out. It's constitutional. Go forward. That is correct, Your Honour. And through the course of these hearings, we've been able to designate a bank of experts and others with whom to work. But, for example, Your Honour, there are some cases that come with challenges, such as Mr. Heyer, where interpreters have to be utilized for each deposition. I guess what I don't understand is, the government's been on notice about this for a while. We have expressed discomfort at having people be in jail without any of these hearings to retain them civilly. And we've suggested that the government start making preparations before their release date. Has the government done any of that? Your Honour, I can't speak for the provisions that have been made. That would be someone well above my level in being able to make those determinations. Is that somebody in the Attorney General's office? I guess the BOP is under the Attorney General. Between people that were held up by virtue of the Comstock litigation and folks who have come along after that, do you know how that divides out between people that were delayed because of Comstock and folks that have come on since then? The vast majority of the individuals who were delayed because of Comstock have been dealt with. Those individuals that we're currently dealing with now, going through depositions, receiving expert reports, are all post-Comstock. Your Honour, now moving on to the additional points that were raised by the respondent. The district court also did not abuse its discretion in finding Mr. Heyer sexually dangerous. There was adequate information in the record from which Judge Boyle could determine that he did, in fact, remain sexually dangerous. The respondent has set forth parameters that Dr. Andrews' report actually claims that Mr. Heyer's deafness contributes to his sexual dangerousness. That's simply not the case, and that wasn't purported by any of the experts who actually opined regarding the sexual dangerousness. Dr. Litton, who was the only expert to say that Mr. Heyer was not sexually dangerous, in fact, found that there was evidence in his prior record to designate a diagnosis of pedophilia. However, Dr. Litton failed to set forth any parameters under which this acceptably chronic condition could have been cured, particularly since Mr. Heyer was unable to successfully complete any type of treatment. And going further to negate Dr. Andrews' position of evaluating Mr. Heyer, she indicated that he would not be able to understand any proceedings against him. That's contrary to earlier competency findings. She also indicated that he would not be able to complete any type of treatment or perform any type of activities. Included in the joint appendix is actually certificates that were submitted by the respondent that he actually completed anger management training. That also goes to negate Dr. Andrews' assertion that he can't be competent to be allowed to make any type of reformation at all. Your Honors, there was evidence in the record as to the third prong with regard to his inability to refrain from continuing to act out that he has not successfully completed any type of sexual offense treatment. Dr. Davis in particular noted that failure to complete treatment and being kicked out of treatment as Mr. Heyer was is actually more dangerous than someone who's failed to complete treatment. There was evidence in the record of his inability to activate any level of self-control, which is exhibited through the number of times that he re-offended after being let out, even after the episode with the 10-year-old boy. Upon his release, he resumes a one-and-a-half-year relationship with an adolescent male. That is an issue that the respondent continually put forward in his defense in saying there was no contact defense by Mr. Heyer since 1993. Because the individual with whom Mr. Heyer engaged in an inappropriate relationship, the respondent deems to be prepubescent. They don't deem that as a relevant consideration for the court. However, it was an inappropriate relationship, and because Mr. Heyer is an inaccurate historian, one cannot be certain as to when that relationship began. It could have actually began when Kelly, the young man, was actually a prepubescent, which would be another victim of Mr. Heyer. The court properly considered the evidence in front of it, determining that Mr. Heyer was a sexually dangerous individual and that he met the criteria for commitment. There was no abuse of discretion in this case. As to the respondent's third point, asking this court, in effect, this panel, to overrule another sitting panel as is set forth in the Glide Hill case, that would certainly be inappropriate. Ms. Walker, I wonder if you could get us, you probably know from your office that you've done this, the office has done it in earlier cases, a list of the release date and the certification, time of the release date, certification, and the hearing date for people that are in this category right now. So that we'd have a grasp of what we're looking at in this field. Your Honor, would you like that sent to all three chambers? Yeah, yeah, just follow up with the clerk. We'll get it. Just like you would have. Yes. If I could add one other thing to that. Certainly. If you could just designate on there the folks that are there, the ones that were subject to the stay by virtue of Comstock and those who were not. And I'd be happy to have you, if there's any narrative about a plan to speed these up, I'd be happy to have that attached as well. Yes, Your Honor. Thank you very much. Thank you, Your Honors. And in closing, I would simply ask you to affirm the decision of the District Court. Thank you. Your Honors, in response, I think you asked Judge Motz about how exactly the consecutive interpreting worked, and I do think Ms. Walker got it correct in terms of you wait. I do, just because it's very hard, it's honestly easier to do with gestures than words. Mr. Heyer's interpretive situation was such. The witness was speaking. There was an American Sign Language interpreter interpreting in sign language that witness. Not for Mr. Heyer, but for a deaf interpreter who would take these signs and then, Your Honor, simplify them for Mr. Heyer because of Mr. Heyer's linguistic level. And then Mr. Heyer would focus on that interpreter. Sounds like that's a pretty special arrangement. And, Your Honor, that, and I would point to Joint Appendix 644, that occurring in real time looks impressive. And it looks like he's understanding what's going on, and it looks like we have a lot going on. That happening in real time effectively means Mr. Heyer, just as a matter of pure physics, could not understand what was happening. I agree, certainly, that, again, it looks impressive, and the district court provided these services. These services, which came from Dr. Andrews' report, Dr. Andrews herself indicated don't make sense without consecutive interpreting. It was a matter of the pace of the proceedings such that he could understand what was happening before him. He couldn't understand. And we spent a lot of time up here, and, again, I think Your Honors, you know, obviously see Judge Boyle's three sentences much differently than I do because I think, obviously, based on the panel's questions, you see that as the district judge conducted a full analysis, the district judge's references to criminal versus civil. You know, as you pointed out, Judge Diaz, it's kind of not relevant as part of the legal analysis. It was sort of the only law he mentioned. The only fact he mentioned is that we're not turning this into a marathon. Well, where did Judge Boyle have any basis to see how long this would take? What if it turned a day-and-a-half proceeding into a two-day proceeding? You know, in the Matthews v. Eldridge factors, which, again, since this does seem to come down to, we would say substantive, statutory, and procedural due process, but procedural due process, you know, what's the goal? You know, Mr. Heyer's rights are fundamental. No one would dispute that. The government doesn't really have much of an interest, if any, in Mr. Heyer not understanding the proceedings. I would say the government had as much interest in him understanding as he did, and the record, again, the undisputed record, indicated that this would increase the accuracy of the proceedings. And we fundamentally disagree that Judge Boyle's three sentences, that we can read into that all of the analysis, all of the, you know, contemplation, all of the factual back-and-forth that the government put in its brief and that Ms. Walker talked about up here. It was Judge Boyle's obligation to do that. What do you make of the evidence that Ms. Walker summarized with respect to the prior depositions where there was not consecutive interpretation and yet no indication that your client did not understand what was going on? That deposition, Your Honor, if you look at it in the record, is filled with Mr. Heyer's corrections, post hoc corrections. He had as long as he needed to go through that and show how many errors were in that deposition. He didn't get that opportunity at trial. The deposition, to me, demonstrates the need for the consecutive interpreting, and it was a different proceeding. We put on the evidence in this case. We made the motion in this case for the trial. No one believes Mr. Heyer actually understood what happened. I see my light's on, if I may finish. Thank you. Finish my sentence, Your Honor. I will start a new sentence. Mr. Heyer had the right to understand the proceedings against him. He didn't. Therefore, this case needs to be remanded, and he needs to get a new hearing where he does get that fundamental right of understanding. Thank you very much. We will come down and greet the lawyers and then go directly to our next case.
judges: Diana Gribbon Motz, G. Steven Agee, Albert Diaz